Debbie ST. LAWRENCE,
Plaintiff/Appellant,

v.

TRANS WORLD AIRLINES, INC.,
Defendant/Respondent.

No. ED 75774.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 16, 1999.

**146**

MaDouglas Brian Salsbury, Law Office of Salsbury, P.C., Eureka, for Appellant.

John B. Renick, St. Louis, and Co-Counsel Geoffrey Macdonald Gilbert, Law Office of McMahon, Berger, Hanna, Linihan, for Respondent.

SULLIVAN, Judge.

Debbie St. Lawrence ("Appellant") brought a civil action for damages against her former employer Trans World Airlines, Inc. ("Respondent") asserting a common law tort claim for negligent training and resulting economic losses and a section 287.780 [1] retaliatory discharge claim. Appellant appeals from the following judgments: (1) a summary judgment as to Appellant's common law tort claim; and (2) a summary judgment as to Appellant's section 287.780 retaliatory discharge claim. As to Count I, we reverse and remand

with directions to dismiss for lack of subject matter jurisdiction. As to Count II, we affirm.

Respondent hired Appellant as a reservations sales agent in May 1994. Although she had attendance problems in 1995, Appellant received several commendations from customers for her work at the Frequent Flier Service Desk. In August 1995, Appellant applied to become and was accepted as a member of Respondent's Trauma Response Team ("Team") as a "Family Escort." The function of the Team is to represent Respondent and to provide services for survivors or victims' families in the event of a catastrophe such as an airplane crash.

After her acceptance onto the Team, Appellant attended a one-day training session, which included discussion on airplane catastrophes and the role of a Family Escort. She received and read a "Family Escort Manual" ("Manual"). Appellant also was advised that she could decline to serve if asked and that she could withdraw from the Team at any time. In May 1996, Appellant attended another one-day training session, which included a video of an airplane crash and role-playing. After these training sessions, Appellant felt inadequately trained to be a Family Escort, but she did not discuss those feelings with anyone in Respondent's management or in her union.

In July 1996, TWA Flight 800 crashed. As instructed in the Manual, Appellant contacted her team leader, Steve Oliver ("Oliver"), to let him know where she could be reached. Oliver asked Appellant to serve on the Team for the Flight 800 disaster, and she agreed. Appellant flew to New York to complete her service. Her service consisted of being a liaison between Respondent and three victims' families, making travel arrangements for them, and obtaining dental records. She also escorted three caskets with victims' remains that were flown to France for a

**1.** All statutory references are to RSMo 1994, unless otherwise indicated.

funeral service. Appellant represented Respondent at this service. Appellant served in this capacity for approximately two and a half weeks, returning to work in August after Respondent provided her with a week off. During this week off, Appellant attended a group counseling session with a mental health professional provided by Respondent for Team members. Appellant received an appreciation card from the families with whom she worked during the crisis.

The day after Appellant returned to work, she contacted Respondent's Special Health Services ("SHS") to request a counselor with whom she could talk about stress that she was experiencing. She did not indicate the cause of her stress. The contact at SHS told Appellant to call her insurance company, which referred her to a psychologist. Appellant eventually took nine days off, beginning therapy on August 14, 1996. She again returned to work on August 26 with clearance from her psychologist. Appellant did not discuss filing a workers' compensation claim with anyone in Respondent's management in August 1996.

During this time, Appellant also began having angry outbursts at colleagues and supervisors over union issues. Although she was never disciplined or reprimanded for these actions, she did apologize. Additionally, in her capacity as shop steward, Appellant filed several grievances on behalf of her colleague Donald Smith ("Smith"), all of which were denied.

On September 24, 1996, Appellant signed Smith's name on Respondent's sign-in sheet, which is maintained for attendance and payment purposes. Prior to this incident, Appellant had received a copy of Respondent's General Rules of Conduct ("Rules"), applicable to company employees and effective in September 1996. Appellant knew at the time she signed Smith's name that a rule prohibited one employee from forging the name of another employee on the sign-in sheet. Appellant said she signed Smith's name to keep him from getting into trouble. Smith later called in sick for the day.

Appellant twice denied having forged Smith's name because she feared the termination of her job. However, at a discharge hearing, Appellant admitted doing so, and Respondent terminated Appellant on October 31, 1996. Respondent provided Appellant with a letter stating the reason for termination as signing "the check-in sheet for another employee using that employee's name indicating that he was present and should be paid. That employee had called in ill." No other reason was ever given to Appellant for her termination.

After her termination, Appellant filed a workers' compensation claim. In January 1999, she received an award for mental injury due to extraordinary and unusual work-related stress arising out of and in the course of her employment.

■ Appellant's point one on appeal argues that the circuit court erred in concluding that workers' compensation provides the exclusive remedy for her common law tort claim.

■ A motion to dismiss for lack of subject matter jurisdiction is the proper method to raise a workers' compensation exclusivity defense. *James v. Union Elec. Co.*, 978 S.W.2d 372, 374 (Mo.App. E.D. 1998). Regardless of the manner in which it is raised, when a workers' compensation exclusivity defense is raised, the circuit court must initially treat it as a motion to dismiss for lack of subject matter jurisdiction. *State ex rel. J.E. Jones Constr. Co. v. Sanders*, 875 S.W.2d 154, 157 (Mo.App. E.D.1994). Here, the circuit court granted Respondent's Motion for Summary Judgment as to Count I based on a workers' compensation exclusivity defense. The circuit court's summary judgment is null and void because the only power a court has when it lacks subject matter jurisdiction is to dismiss the action. *Heinle v. K & R Express Sys., Inc.*, 923 S.W.2d 461, 464 (Mo.App. E.D.1996).

When a workers' compensation exclusivity defense is raised, the summary judgment standard, i.e., whether a genuine issue of material fact exists, is not the appropriate standard of review. *James*, 978 S.W.2d at 374. Rather, the motion to dismiss should be granted where it appears, by a preponderance of the evidence, that the circuit court lacks subject matter jurisdiction because of workers' compensation exclusivity. *Id.* Although the party raising the defense has the burden to prove lack of jurisdiction, the quantum of proof required is not high. *Id.* In determining whether it has jurisdiction, the circuit court may consider affidavits, exhibits, and evidence pursuant to Rules 55.27 and 55.28.[2] *Burns v. Employer Health Serv., Inc.*, 976 S.W.2d 639, 641 (Mo.App. W.D. 1998).

Where a question of jurisdiction is in doubt, it should be resolved in favor of the Labor and Industrial Relations Commission ("Commission"). *James*, 978 S.W.2d at 374. The determination of whether a case falls within the Commission's exclusive jurisdiction is a question of fact. *Burns*, 976 S.W.2d at 641. When a court's jurisdiction depends on a factual determination, the decision should be left to the sound discretion of the circuit judge. *Id.* Thus, this Court's review is for an abuse of discretion. *Id.* The circuit court abuses its discretion when its ruling is clearly against the logic of the circumstances and is "so arbitrary and unreasonable that it shocks the sense of justice and indicates a lack of careful consideration." *Id.*

This Court reviews the merits of point one on appeal because lack of subject matter jurisdiction may be raised at any time during a proceeding, even for the first time on appeal. *Brunig v. Humburg*, 957 S.W.2d 345, 348 (Mo.App. E.D.1997).

Section 287.120 provides in part that the rights and remedies granted to an employee under the Workers' Compensation Act ("Act") are exclusive and preclude all common law remedies except those not provided for by the Act. The section also provides in part that, for those employers subject to the Act, liability arises for personal injury or death to an employee by accident arising out of and in the course of employment. Here, Appellant argues that the Act does not afford relief for the economic loss she allegedly suffered as a result of her termination by Respondent, such termination allegedly stemming from her mental injury. We disagree. The Act includes this claim for relief.

In *Felts v. Ford Motor Co.*, 916 S.W.2d 798, 802 (Mo.App. W.D.1995), the Western District of the Court of Appeals affirmed the trial court's dismissal for lack of jurisdiction of the plaintiff's action for damages against his employer because the Commission had exclusive jurisdiction over the plaintiff's claims. The plaintiff alleged "severe and prolonged economic hardship" resulting from his employer's alleged interference with medical treatment for his work-related injuries. *Id.* He did not seek compensation for those work-related injuries but rather for those damages resulting from his employer's post-accident actions. *Id.* Nonetheless, this Court concluded that the damages for which he sought compensation arose out of his employment, and thus they were included within the Act. *Id.*

In *Burns*, 976 S.W.2d at 642–644, the Western District of the Court of Appeals also affirmed the trial court's dismissal for lack of jurisdiction of the plaintiff's medical malpractice claim because the Commission had exclusive jurisdiction over the plaintiff's claim. The plaintiff argued that the Act did not provide a remedy for her alleged medical malpractice injury because it was a new and separate injury from her work-related injury. *Id.* at 643. Nonetheless, this Court concluded that the Act applied to these "new injuries" because they arose out of her employment. *Id.* at 644.

---

2. All rule references are to Mo. R. Civ. P.1999, unless otherwise indicated.

■ Similarly, here, Appellants' post-accident economic losses, allegedly resulting from her work-related mental injury and subsequent termination, arose out of her employment. The magnitude of Appellant's alleged economic losses does not remove the claim from the scope of the Act. The legislative intent of the Act is to give "employees a sure and speedy means of compensation for injuries suffered in the course of employment without the necessity of proving fault on the part of the employer." *Gambrell v. Kansas City Chiefs Football Club, Inc.*, 562 S.W.2d 163, 165 (Mo.App.1978). In exchange, the Act provides compensation "in only a relatively modest amount...." *Id.* Further, because the Act provides a remedy for accidental loss of human life, the magnitude of economic loss cannot be an exception to the Act's exclusivity.

We hold that the Commission had original and exclusive jurisdiction over Count I of Appellant's petition. Accordingly, the circuit court lacked subject matter jurisdiction. The judgment of the circuit court as to Count I is reversed and remanded with directions to dismiss for lack of subject matter jurisdiction.

■ Appellant's point two on appeal argues that the circuit court erred in concluding that Appellant could not establish her prima facie case as to the section 287.780 retaliatory discharge claim because the exercise of her rights under the Act was not the exclusive cause of Respondent's decision to terminate her employment.

This Court reviews summary judgment essentially *de novo* ·because the propriety of summary judgment is purely an issue of law. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc.1993). The record is reviewed in the light most favorable to the party against whom judgment was entered, and that party is given the benefit of all reasonable inferences from the record. *Id.* Evidence presented in support of the motion is taken as true unless contradicted by the non-moving party's response to the motion. *Id.*

■ The moving party bears the burden of proving that it is entitled to judgment as a matter of law and that no genuine issues of material fact exist. *Id.* at 382. A genuine issue exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. *Id.* A genuine issue is not an argumentative, imaginary, or frivolous dispute. *Id.*

■ Section 287.780 creates for an employee a civil cause of action for damages against an employer by providing that no employer "shall discharge or in any way discriminate against" an employee for exercising any of the employee's rights under the Act. This section does not abolish the employment-at-will doctrine but rather provides a limited exception. *Crabtree v. Bugby*, 967 S.W.2d 66, 70 (Mo. banc 1998).

■ To prevail in a retaliatory discharge action under section 287.780, the plaintiff must prove the following elements: (1) plaintiff's status as an employee of defendant before injury; (2) plaintiff's exercise of a right granted by the Act; (3) employer's discharge of or discrimination against the plaintiff; and (4) an exclusive causal relationship between plaintiff's actions and defendant's actions. *Id.* In this case, there is no dispute as to the first three elements.

■ Element four requires that the exclusive cause for the employee's termination be the exercise of a right under the Act. *Coleman v. Winning*, 967 S.W.2d 644, 648 (Mo.App. E.D.1998). Proof of such exclusive causation is necessarily indirect because the employer is not likely to admit that retaliation was his motive. *Id.* However, such causation does not exist if the basis for the discharge is valid and nonpretextual. *Id.* Appellant argues that she has produced sufficient circumstantial evidence to meet the exclusive causation element of her prima facie case, and thus a genuine

issue of material fact exists as to whether Respondent's reason for Appellant's termination was pretextual.

Although timing alone cannot conclusively establish that an employee was discharged for exercising her rights under the Act, proximity in time between the exercise of the right and the time of the firing is a factor to be considered. *Id.* Appellant finds significance in Appellant's termination occurring about three months after "the occurrence giving rise to her injuries." However, the injury-causing event is not an exercise of a right under the Act. Also, Appellant did not file her workers' compensation claim until after her termination, and any alleged resistance by Respondent to pay Appellant benefits occurred after her termination.

Nor is there any evidence suggesting that Respondent knew, at the time of Appellant's termination, of any prepatory work for filing a workers' compensation claim by Appellant. At Appellant's discharge hearing, she never claimed that she was being discharged to prevent her from exercising her rights under the Act. In fact, that opinion did not develop until the November after her termination. *Cf. Wiedower v. ACF Industries, Inc.,* 715 S.W.2d 303, 306 (Mo.App. E.D.1986) (this Court found sufficient evidence to support possible exclusive causation because defendant was aware at the time of the discharge that plaintiff had contacted an attorney in order to process a workers' compensation claim).

Further, Appellant agreed that, in the three months prior to her termination, her heightened activity as a "pain in the neck" shop steward probably influenced Respondent's decision to terminate her employment. Appellant also never specifically denied the validity of the reason given to her for her termination, although she thought it was a "convenient excuse." *Cf. Coleman,* 967 S.W.2d at 649 (this Court found sufficient evidence to support possible pretext because although employee acknowledged that he was told he was termi-

nated because employer's president did not want to pay his health insurance premium, employee did not admit that this reason was one of the reasons for his termination, and in fact, he specifically denied that this reason was the true reason for his termination).

Additionally, although Respondent may have had valid, co-existing reasons for Appellant's termination, Respondent has consistently provided only one reason as the reason for Appellant's termination. *Cf. Coleman,* 967 S.W.2d at 648 (this Court found sufficient evidence to support possible pretext because employer provided inconsistent reasons for employee's termination). Nor is there any evidence suggesting that the "real reason" for termination was the exercise of rights under the Act. *Cf. Kummer v. Royal Gate Dodge, Inc.,* 983 S.W.2d 568, 572 (Mo.App. E.D.1998) (this Court found sufficient evidence to support possible pretext because employee's affidavit in opposition to summary judgment referred to a supervisor's statement that the "real reason" for his discharge was retaliation). If the evidence demonstrates that the employer had just cause for terminating the employment, other than for the employee's exercise of her rights under the Act, then the employee cannot recover under section 287.780. *Hopkins v. Tip Top Plumbing and Heating Co.,* 805 S.W.2d 280, 284 (Mo.App. W.D.1991).

Where the moving party is the defending party, it may establish a right to summary judgment by showing facts that negate any one of the plaintiff's prima facie case elements. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 381. Upon meeting this burden, the non-moving party must show that one or more of the material facts shown by the moving party to be undisputed is, in fact, genuinely disputed. *Id.* Respondent has shown facts negating the exclusive causation element of Appellant's prima facie case. Appellant has not produced sufficient evidence to establish

that Respondent's reason for Appellant's termination was pretextual.

Respondent is entitled to judgment as a matter of law because there is no genuine issue of material fact as to the exclusive causation element of Appellant's prima facie case. Accordingly, the judgment of the circuit court as to Count II is affirmed.

CRANE, P.J. and ROBERT G. DOWD, Jr., J., concur.